IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**TRAYVON STRANGE,**

      **Petitioner,**

v.                                               Case No. 1:18-cv-00402

**DONNIE AMES, Superintendent,**
**Mount Olive Correctional Complex,**[1]

      **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable David A. Faber, Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Petition") (ECF No. 2). Respondent has filed an Answer (ECF No. 9) asserting that Petitioner is not entitled to any relief on the claims in his Petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are taken from the Supreme Court of West Virginia's (the "SCAWV") Memorandum Decision affirming the Circuit Court of Mercer County's denial of the petitioner's habeas corpus petition:

> In October of 2014, a Mercer County grand jury indicted petitioner on one count of first-degree murder. The charge stemmed from an incident where petitioner shot Steven Rhodes ("the victim") in the head. Petitioner was twenty-years-old. The parties reached a plea agreement whereby

---

[1] The current Superintendent at the Mount Olive Correctional Complex is Donnie Ames. The Clerk is directed to substitute Donnie Ames as the proper respondent herein.

petitioner would plead guilty to the indictment and the State would agree that the appropriate disposition of the case would be a life sentence with the possibility for parole. Because the parties entered into the plea agreement pursuant to Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure, the mutually-agreed upon sentence recommendation would be binding on the circuit court.

However, there was extensive discussion at both the plea and sentencing hearings about whether, due to petitioner's age, the circuit court should suspend his life term of incarceration in favor of sentencing him as a youthful offender pursuant to West Virginia Code § 25-4-6 [footnote omitted]. At the January 20, 2015, plea hearing, the circuit court (1) questioned whether petitioner was eligible for youthful offender sentencing because he was pleading guilty to a felony offense punishable by a life term of incarceration and (2) informed petitioner that, even if he was not excluded from youthful offender sentencing, it was unlikely to sentence him pursuant to West Virginia Code § 25-4-6 given that he killed another person in a disagreement over a hallway light.

Being so informed, petitioner told the circuit court that he still would "take this plea." During the petitioner's plea colloquy pursuant to *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975), the circuit court went over the constitutional rights petitioner would be waiving and asked him whether he was pleading guilty as his own "free and voluntary act." Petitioner responded, "Yes." The circuit court inquired whether petitioner was pleading guilty because he was in fact guilty. Petitioner answered, "I'm guilty because I shot [the victim]."

Both of petitioner's attorneys informed the circuit court that it was in his best interest to enter into the plea agreement. Petitioner's attorneys also responded that they were satisfied with the State's production of discovery in the case. Petitioner stated that the attorneys represented him satisfactorily and that he had no complaints regarding their performance. Petitioner testified that he met with one attorney three times and with the other attorney approximately five times.

The State proffered the factual basis for petitioner's guilty plea. The State noted that the victim, who initially survived being shot, identified petitioner in a 911 call and in a statement to a police officer. The State noted that the victim told the officer that "it was [petitioner] that had the gun."[2]

---

[2] According to Respondent's brief, the State had the 911 recording in which the victim identified Petitioner as the shooter, as well as his identification of Petitioner as the shooter when he was in the ambulance. Additionally, the forensic evidence demonstrated that the victim was shot with a .22 caliber bullet, and .22 caliber bullets were found during a search of Petitioner's residence. Finally, gunshot residue was located on Petitioner's clothing. (ECF No. 9 at 13 n.1 and Ex. 1 at 34-35). For ECF document references herein, the undersigned will cite to the ECF page number at the top of each page ("Page ____ of ____").

> Thereafter, the circuit court again asked petitioner whether he was pleading guilty "freely and voluntarily." Petitioner responded affirmatively. Finally, the circuit court inquired whether petitioner still desired that it accept his guilty plea. Petitioner again responded affirmatively, requesting that the circuit court "accept the plea." At the conclusion of the plea hearing, the circuit court found that the petitioner entered his guilty plea knowingly and voluntarily, and that he did so with a full understanding of his constitutional rights. The circuit court further found that the plea agreement was in the interest of justice and that a factual basis existed for the petitioner's guilty plea. The circuit court conditionally accepted petitioner's guilty plea pending a presentence investigation report.
>
> At the March 12, 2015, sentencing hearing, the circuit court found that the presentence investigation report was incorrect in stating that petitioner was eligible for youthful offender sentencing pursuant to West Virginia Code § 25-4-6. The circuit court definitively ruled that West Virginia Code § 25-4-6 provided that petitioner was ineligible for youthful offender sentencing because he was pleading guilty to a felony offense punishable by a life term of incarceration. The circuit court also repeated that, even if petitioner was eligible under West Virginia Code § 25-4-6, it was unlikely to sentence him as a youthful offender given the facts of this case. Accordingly, the circuit court allowed petitioner the opportunity to confer with his attorneys and the opportunity to withdraw his guilty plea.
>
> Following two discussions off the record, petitioner informed the circuit court that he did not desire to withdraw his plea and wanted to continue with the sentencing hearing. Thereafter, the circuit court found that, because of petitioner's "young age," a Mercer County jury would have made a recommendation of mercy if the case had gone to trial. Therefore, the circuit court accepted petitioner's guilty plea and, pursuant to Rule 11(e)(1)(C), imposed the mutually-agreed upon sentence of a life term of incarceration with the possibility of parole.

*Strange v. Ballard* ("*Strange II*"), No. 16-1137, 2017 WL 5013323, *1-2 (W. Va. Nov. 3, 2017); *see also* ECF No. 9, Ex. 11 at 1-3.

On July 25, 2015, Petitioner appealed to the Supreme Court of Appeals of West Virginia (the "SCAWV") challenging the circuit court's ruling that he was ineligible for youthful offender sentencing because he was pleading guilty to a felony offense punishable by a life term of incarceration. (ECF No. 9, Ex. 3). On September 3, 2015, the State of West Virginia filed a Summary Response (*Id.*, Ex. 4). On January 11, 2016, the

SCAWV filed a Memorandum Decision affirming the circuit court's order. *State v. Strange ("Strange I")*, No. 15-0372, 2016 WL 143433 (W. Va. Jan. 11, 2016). (ECF No. 9, Ex. 5). Specifically, the SCAWV found that the language of W. Va. Code § 25-4-6 "clearly and unambiguously excludes 'an offense *punishable* by life imprisonment' from the circuit court's discretion to suspend a sentence . . . ." (ECF No. 9, Ex. 5 at 3).

On October 3, 2016, Petitioner filed a *pro se* petition for a writ of habeas corpus in the Circuit Court of Mercer County alleging two claims: (1) that his guilty plea was not knowing and voluntary because of his trial attorney's erroneous advice that he would be eligible for youthful offender sentencing; and (2) that his attorneys provided ineffective assistance because they conducted an inadequate investigation and allowed him to plead guilty without a complete understanding of the rights he was waiving or his eligibility for youthful offender sentencing. (ECF No. 9, Ex. 6). On November 16, 2016, the circuit court summarily denied the petition without appointing counsel or holding an evidentiary hearing. (*Id.*, Ex. 7).

On March 8, 2017, Petitioner filed a Petition for Appeal concerning the denial of his circuit court habeas petition to the SCAWV, raising the same two grounds for relief. (*Id.*, Ex. 8). On April 19, 2017, Respondent responded to the motion (*id.*, Ex. 9), to which Petitioner replied (*id.*, Ex. 10). On November 3, 2017, the SCAWV affirmed the denial of habeas corpus relief in *Strange II*. (ECF No. 9, Ex. 11).

Petitioner then filed the instant § 2254 petition in this court on March 7, 2018. (ECF No. 2). Petitioner repeats his assertions that his counsel provided ineffective assistance of counsel by: (1) allowing him to enter a guilty plea to First Degree Murder without a complete understanding of the rights he was waiving and his sentencing exposure, resulting in an allegedly unknowing and involuntary plea; and (2) by failing to

"hold the State's Case to meaningful adversarial testing." (ECF No. 2 at 6). Respondent filed an Answer to the § 2254 petition (ECF No. 9), and Petitioner filed a Reply (ECF No. 12). This matter is ripe for adjudication.

## **STANDARD OF REVIEW**

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. *Id*. at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). The undersigned will apply these standards in reviewing Petitioner's claims for relief herein.

## ANALYSIS

### A. Voluntariness of plea and assistance of counsel in plea process.

In Ground Two of his Petition, Petitioner asserts that his guilty plea to First Degree Murder was not knowing and voluntary because his attorneys allowed him to enter the plea without a complete understanding of the rights he was waiving and the sentence he was facing. In Ground One of the Petition, Petitioner asserts a claim of ineffective assistance of counsel on this same basis.

In *Strickland v. Washington*, 466 U.S. 688 (1984), the Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-91. Moreover, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Furthermore, the AEDPA "adds a layer of respect for a state court's application of the legal standard." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).

In reviewing a trial counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, *id.* at 689, and the burden is on the petitioner to show prejudice. *Hutchins v. Garrison*, 724 F.2d 1425 (4th Cir. 1983). Further, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A petitioner may not merely speculate about potential prejudice but must "affirmatively prove" that the result of the proceedings would have been different but for the deficient performance of trial counsel. *See Strickland*, 466 U.S. at 693.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court acknowledged that the Sixth Amendment right to the effective assistance of counsel extends to the guilty plea process and plea bargaining and should be analyzed using the *Strickland* standard. *See also Lafler v. Cooper*, 566 U.S. 156 (2012) (deficient advice to reject plea offer and go to trial violates Sixth Amendment); *Missouri v. Frye*, 566 U.S. 134 (2012) (failure to communicate formal plea offer constitutes ineffective assistance of counsel and violates Sixth Amendment).

The *Hill* Court addressed the voluntariness of a guilty plea and held that "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" 474 U.S. at 56 (quoting *McMann v. Richardson*, 387 U.S. 759, 771 (1970)). Thus, "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.'" *Id.* at 56-57. Furthermore, with respect to the *Strickland* prejudice prong, the *Hill* Court found that, to demonstrate prejudice from counsel's performance in the

7

plea bargaining process, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted upon going to trial." *Id.* at 59.

Respondent notes that, at sentencing, the circuit court informed Petitioner that youthful offender sentencing and placement at the Anthony Center was not available for his offense under W. Va. Code § 25-4-6. (ECF No. 9 at 12 and Ex. 2 at 3-4). Respondent further notes that the circuit court told Petitioner and his counsel, "[i]f that changes his view of the matter, let me know, and we'll set this matter down for trial." (*Id.*) The circuit court then permitted Petitioner to have two off the record discussions of the matter with his counsel. Ultimately, counsel told the court as follows:

> My client's position, Your Honor, is that, given the ruling of the Court, we're going to proceed with the sentencing in this matter, and then as I said, we've taken exception to the -- Anthony Center. We'll probably appeal that.

(ECF No. 9 at 12 and Ex. 2 at 6). The circuit court then advised the parties, "it's not really a case that I would even look at Anthony . . . if he was eligible[.]" (*Id.*) In light of this exchange on the record, Respondent asserts:

> Given that the State's case against the Petitioner was extremely strong [footnote omitted] and that the circuit court indicated that sentencing as a Youthful Offender to the Anthony Center was extremely remote, Resp't Ex. 1 at 8, 9, the Petitioner has failed to demonstrate that the decision of the [SCAWV] was contrary to or an unreasonable application of clearly established United States Supreme Court precedent. As such, the Petitioner's claim to federal habeas relief should fail.

(ECF No. 9 at 13).

Petitioner's Response to Respondent's Answer describes his claim as follows:

> The crux of Petitioner's argument is that his lawyers erroneously advised him to enter into a plea agreement with the State and plead guilty to First Degree Murder. Trial counsel advised the Petitioner that if he pled guilty he would be eligible for sentencing as a youthful offender pursuant to *West Virginia Code § 25-4-6*. The Petitioner first puts forward for this

8

> Honorable Court's consideration that his guilty plea was involuntary due to the fact that he was erroneously advised by his court appointed lawyer.
>
> The Petitioner argues that his decision to plead guilty was greatly influenced by his attorneys' proffering that he would be eligible for sentencing to the Anthony Center for Youthful Offenders, which would drastically reduce his sentencing exposure. The transcripts of the plea and sentencing hearing make abundantly clear that the defendant and his attorneys were mistakenly banking on the Circuit Court of Mercer County granting the designation of the defendant as a youthful offender.

(ECF No. 12 at 3).

Despite the fact that the circuit court assiduously counseled Petitioner at the outset of his sentencing hearing that state law did not permit him to be sentenced as a youthful offender, and then permitted him the opportunity to discuss with his counsel whether he wished to withdraw his guilty plea and go to trial, Petitioner ultimately determined that he wanted to proceed with his guilty plea and sentencing, knowing that he would not be sentenced a youthful offender and would receive a life sentence. Nonetheless, he now contends as follows:

> The Petitioner avers that his attorneys counseled him, even after the Court's ruling, that he could be sentenced as a youthful offender and that he should accept the plea bargain and appeal the judge's ruling denying youthful offender status and sentencing. It is abundantly clear that Counsel's advice to plead guilty was erroneous and well below the standards of reasonableness in view of the professional norm that a lawyer recommending a guilty plea should know the law he is advising his client to rely on to mitigate the sentencing exposure.

(*Id.* at 4). Petitioner maintains that the plea and sentencing transcripts demonstrate the high level of confusion on this issue.

To the contrary, the transcripts herein demonstrate that, despite the initial misunderstandings of Petitioner and his counsel on the youthful offender sentencing issue, the circuit court clearly explained to Petitioner that he was not eligible for youthful offender sentencing and that, even if he were, the court was not inclined to grant such

9

sentencing due to the grave nature of his offense. Moreover, in light of the overwhelming evidence against Petitioner, it is likely that he would have been found guilty, if he had gone to trial, and may not have been granted mercy by a jury. Thus, it appears that counsel's advice to plead guilty in order to receive mercy did not fall below an objective standard of reasonableness. *See, e.g., Hess v. United States*, No. 1:08-cv-902, 2009 WL 2029760, at *6 (E.D. Va. July 9, 2009) ("Advising a client to plead guilty and take advantage of the potential sentencing reductions attendant on a guilty plea when it is clear that the Government will be able to prove guilt at trial does not fall below an objective standard of reasonableness."); *Cramer v. Warden*, No. 08-cv-1589, 2009 WL 825772 (D.S.C. Mar. 26, 2009) (defendant did not receive ineffective assistance of counsel where counsel decided to pursue a plea agreement and overwhelming evidence of guilt was unlikely to bring an acquittal).

Petitioner's Response contends that his counsel could have presented evidence about the altercation with the victim in a light that may have resulted in his conviction for a lesser charge of Second Degree Murder. Specifically, his Response states:

> Petitioner avers that he would not have pled guilty to First Degree Murder except for the erroneous advice of counsel. The case against the Petitioner very easily could have resulted in a jury verdict of Second Degree Murder. A conviction for Second Degree Murder in West Virginia carries a drastically reduced sentence of ten (10) to forty (40) years imprisonment compared to the life sentence for First Degree Murder. The State's theory of the case was that Petitioner got into a heated argument with the decedent (a registered sex offender) about his continued practice of turning off a hall light. The Petitioner had a small child and was concerned about the safety and welfare of his girlfriend and child due to the poor lighting in the hallway. Petitioner asked the victim several times to stop turning out the light multiple times to no avail. On the day of the shooting, Petitioner and the victim had a heated exchange and it is conceivable that if he was convicted (Petitioner maintains his innocence), the jury could have rendered a Second Degree Murder (heat of passion) verdict.

(ECF No. 12 at 15-16).[3]

The SCAWV found that Petitioner was fully informed by the circuit court that it disagreed with his attorneys that he could be sentenced as a youthful offender. (ECF No. 9, Ex. 11 at 6). Accordingly, the court concluded that "both petitioner's initial decision to plead guilty and his decision not to withdraw his plea at the sentencing hearing were knowing and voluntarily made." (*Id.* at 5).

The SCAWV further concurred with the circuit court's finding that counsel's advice to plead guilty "was not outside the broad range of professionally competent assistance" and further found that "the plea agreement was in petitioner's best interest because of its preservation of the possibility of parole with regard to a life sentence in light of the substantial evidence of guilt." (*Id.* at 6-7). Thus, the SCAWV found that, even if counsel's performance were somehow deficient, Petitioner could not adequately demonstrate sufficient prejudice to establish a Sixth Amendment violation. (*Id.*)

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the state courts' decisions were contrary to or involved an unreasonable application of, clearly established federal law, or that they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Petitioner is not entitled to habeas corpus relief on these claims as set forth in his Petition.

---

[3] The undersigned notes that, to the extent that Petitioner references "heat of passion," evidence that an intentional killing occurred upon "gross provocation and in the heat of passion," without malice, can support a verdict of Voluntary Manslaughter, not Second Degree Murder. *See State v. Beegle*, 425 S.E.2d 823, 827 (W. Va. 1992). A verdict of Second Degree Murder, on the other hand, may be rendered if the jury finds that the defendant killed the victim with malice, but without deliberation and premeditation. *State v. Guthrie*, 461 S.E.2d 163, 179-80 (W. Va. 1995). As discussed *infra*, based upon the evidence proffered by the State, a jury could have found that Petitioner acted deliberately with malice. Thus, it was reasonable for defense counsel to believe that a jury could have found Petitioner guilty of First Degree Murder.

### B. Ineffective assistance of counsel in preparation of defense.

In Ground One of his Petition, Petitioner further asserts that his counsel provided ineffective assistance because they failed to properly investigate his case and formulate a trial strategy. (ECF No. 2 at 6). In sum, he contends that "his attorneys failed to hold the State's Case to meaningful adversarial testing." (*Id.*) His petition further states:

> From the start of their representation, the attorneys for the Petitioner did nothing but advise him to plead guilty. The Petitioner's counsel repeatedly and sometimes heatedly told him that he had no defense to the charges leveled by the State. In truth, counsel for the Petitioner made no independent evaluation of the evidence, made no investigation and took as fact the State's proffering of evidence. Counsel for the Petitioner never hired any experts, challenged any of the eye and ear witness statements, nor developed a trial strategy or defense other than erroneous advice to plead guilty.

(*Id.*)

Respondent, however, asserts that Petitioner has failed to identify what additional independent investigation would have revealed and what testimony any experts could have provided that would have affected the outcome of the proceedings. Thus, Respondent contends that this claim is insufficiently pled and must be denied. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); *Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir. 1990) (habeas petitioners must allege "what an adequate investigation would have revealed."). (ECF No. 9 at 13-15).

Additionally, citing to the Supreme Court's decision in *United States v. Chronic*, 466 U.S. 648, 657 n.19 (1984), Respondent contends that, while "the adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate[,]'" "sometimes there is no defense to a criminal charge and it

disserves the interests of his client by attempting a 'useless charade.'" (*Id*. at 15). Thus, Respondent contends that there was no theory of defense that had a likelihood of success at trial, and that counsel acted in Petitioner's best interest in negotiating a plea that would permit him the potential for parole.

As noted above, in his Response, Petitioner contends that the evidence could have supported a verdict for a lesser offense and that his attorneys failed to develop a theory that the shooting occurred in the "heat of passion." (ECF No. 12 at 16). Nonetheless, Petitioner has not offered any evidence or argument concerning what additional investigation was necessary, or what witnesses, including experts, should have been called to permit the development of a defense theory that would have altered the outcome of his proceedings.

Petitioner made this same argument in his underlying state habeas proceedings. In its order denying his habeas corpus petition, the circuit court found as follows:

> This offense occurred on Monday, April 21, 2014, when Patrolman R.D. Davis responded to an argument. When he arrived, Officer Davis spoke with the victim, Stephen Rhodes, who stated that he and an individual known as "Cali" had been in an argument. He described "Cali" as a black male with a gray shirt. Cali was later identified to be Trayvon Strange. Approximately forty (40) minutes later, the victim was able to speak with Detective Adams of the Bluefield Police Department. Rhodes told Detective Adams that "Cali was the person who shot him and Cali lived in an upstairs apartment."
>
> The Defendant also admitted that he had some past problems with the victim and that Mr. Rhodes had a bad habit of turning off the lights in the stairway in the hallway. He indicated that on the day of the incident he and the victim were arguing and he thought the victim pulled a machete. He initially left the apartment building but returned a short time later with a gun and shot the victim in the back of the head. In addition, there is testimony from Defendant's former girlfriend that placed him at the scene of the crime. Subsequent to this admission from the Defendant, police obtained a warrant and retrieved a gun from the Defendant's residence. Considering all the circumstances, the identified act of allowing the Defendant to plead guilty was not outside the broad range of professionally

> competent assistance. In exchange for his plea, the Defendant received a life sentence with mercy, when likely the only option would have been a life sentence. The defendant received life with mercy as a result of the State's recommendation. Counsel's advice to take a plea is not incompetent given the weight of the evidence.

(ECF No. 9, Ex. 7 at 16-17). Thereafter, in addition to the findings already discussed, the SCAWV made the following findings in affirming the circuit court's ruling:

> The plea hearing transcript reflects that there was discovery given by the State to the defense. During the State's proffer of evidence, the assistant prosecutor discussed that a witness statement had been disclosed to the defense. Petitioner's attorneys also commented on the State's production of discovery in that they informed the circuit court that they were satisfied with the State's disclosure. Also, during the plea colloquy, the circuit court noted that there had been two prior hearings where it denied defense motions to suppress certain evidence. Therefore, we find that the record reflects that petitioner's attorneys provided effective assistance and that that their advice in favor of a guilty plea was not based on unpreparedness for trial, but because, as they told the circuit court, the plea was in petitioner's best interest.

(ECF No. 9, Ex. 11 at 6-7).

With respect to this claim, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or that they involved an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Petitioner is not entitled to habeas corpus relief on this claim as set forth in his Petition.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 2) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Faber.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Petitioner, and to transmit it to counsel of record.

March 6, 2020

Dwane L. Tinsley
United States Magistrate Judge