IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

TRAYVON STRANGE,

    Petitioner,

v.                                          CIVIL ACTION NO. 1:18-00402

DONNIE AMES, Superintendent,
Mount Olive Correctional Complex,

    Respondent.

### MEMORANDUM OPINION AND ORDER

By standing order, this matter was referred to Magistrate Judge Dwane L. Tinsley for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Tinsley submitted his Proposed Findings and Recommendation ("PF&R") on March 6, 2020, in which he recommended that this court deny petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 and dismiss this matter from the court's active docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge Tinsley's PF&R. Pursuant to § 636(b)(1)), the court need not conduct a de novo review of the PF&R when a party "makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano

v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  After obtaining an extension of time to do so, see ECF No. 16, petitioner submitted timely objections to the PF&R on April 20, 2020.

I.

Under 28 U.S.C. § 2254, Strange is entitled to federal habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d) provides that when the issues raised in a § 2254 petition were raised and considered on the merits in State court habeas proceedings, federal habeas relief is unavailable unless the State court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal habeas Court may grant habeas relief "if the State court arrives at a conclusion opposite to that reached by this Court on a question of law or if the State court decides a case differently than this Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. 362, 412-13 (2000).

A federal habeas court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles.  Id.  In determining whether the State court's decision was contrary to, or was an unreasonable application of, Supreme Court precedent, all factual determinations by the State court are entitled to a presumption of correctness.  See 28 U.S.C. § 2254(e).  A state court's decision is "contrary to" clearly established federal law when it "applies a rule that contradicts the governing law set forth" by the United States Supreme Court, or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  Williams, 529 U.S. at 405-06.  A state court's decision involves an "unreasonable application" of clearly established federal law under § 2254(d)(1) "if the state court identifies the correct governing legal rule from . . . [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  Id. at 407.  "The state court's application of clearly established federal law must be 'objectively unreasonable,' and 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

-3-

applied clearly established federal law erroneously or incorrectly.'" Robinson v. Polk, 438 F.3d 350, 355 (4th Cir. 2006) (quoting Williams, 529 U.S. at 411).  Moreover, when "assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." Wilson v. Ozmint, 352 F.3d 847, 855 (4th Cir. 2003) (quotation marks omitted).

## II.

Against this backdrop, the court has carefully considered petitioner's objections and reviewed the record de novo.  The court concludes that all of Strange's objections to the PF&R are without merit.  Given that Strange's objections mirror his arguments considered and rejected by the magistrate judge, it would serve no useful purpose for the court to address each of those objections and go through the exercise of reiterating the findings of fact and conclusions which are already set forth in Magistrate Judge Tinsley's comprehensive and well-reasoned PF&R. Accordingly, the court **OVERRULES** Strange's objections for the same reasons stated in the PF&R.  The court will, however, separately address a few points raised in petitioner's objections.

A.   *Voluntariness of Plea*

In 2014, twenty-year-old Trayvon Strange "shot Steven Rhodes in the head following an argument about a light bulb in their apartment complex." State v. Strange, No. 15-0372, 2016 WL 143433, *1 (W. Va. Jan. 11, 2016).

> In October of 2014, a Mercer County grand jury indicted petitioner on one count of first-degree murder.  The charge stemmed from an incident where petitioner shot Steven Rhodes ("the victim") in the head.  Petitioner was twenty-years-old.  The parties reached a plea agreement whereby petitioner would plead guilty to the indictment and the State would agree that the appropriate disposition of the case would be a life sentence with the possibility for parole.  Because the parties entered into the plea agreement pursuant to Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure, the mutually-agreed upon sentence recommendation would be binding on the circuit court.

> However, there was extensive discussion at both the plea and sentencing hearings about whether, due to petitioner's age, the circuit court should suspend his life term of incarceration in favor of sentencing him as a youthful offender pursuant to West Virginia Code § 25-4-6.  At the January 20, 2015, plea hearing, the circuit court (1) questioned whether petitioner was eligible for youthful offender sentencing because he was pleading guilty to a felony offense punishable by a life term of incarceration and (2) informed petitioner that, even if he was not excluded from youthful offender sentencing, it was unlikely to sentence him pursuant to West Virginia Code § 25-4-6 given that he killed another person in a disagreement over a hallway light.

> Being so informed, petitioner told the circuit court that he still would "take this plea."  During petitioner's plea colloquy pursuant to Call v. McKenzie, 159 W. Va. 191, 220 S.E.2d 665 (1975), the circuit court went over the constitutional rights petitioner would be waiving and asked him whether he

was pleading guilty as his own "free and voluntary act." Petitioner responded, "Yes." The circuit court inquired whether petitioner was pleading guilty because he was in fact guilty. Petitioner answered, "I'm guilty because I shot [the victim]."

Both of petitioner's attorneys informed the circuit court that it was in his best interest to enter into the plea agreement. Petitioner's attorneys also responded that they were satisfied with the State's production of discovery in the case. Petitioner stated that the attorneys represented him satisfactorily and that he had no complaints regarding their performance. Petitioner testified that he met with one attorney three times and with the other attorney approximately five times.

The State proffered the factual basis for petitioner's guilty plea. The State noted that the victim, who initially survived being shot, identified petitioner in a 911 call and in a statement to a police officer. The State noted that the victim told the officer that "it was [petitioner] that had the gun."

Thereafter, the circuit court again asked petitioner whether he was pleading guilty "freely and voluntarily." Petitioner responded affirmatively. Finally, the circuit court inquired whether petitioner still desired that it accept his guilty plea. Petitioner again responded affirmatively, requesting that the circuit court "accept the plea." At the conclusion of the plea hearing, the circuit court found that petitioner entered his guilty plea knowingly and voluntarily, and that he did so with a full understanding of his constitutional rights. The circuit court further found that the plea agreement was in the interest of justice and that a factual basis existed for petitioner's guilty plea. The circuit court conditionally accepted petitioner's plea pending a presentence investigation report.

At the March 12, 2015, sentencing hearing, the circuit court found that the presentence investigation report was incorrect in stating that petitioner was eligible for youthful offender sentencing pursuant to West Virginia Code § 25-4-6. The circuit court

-6-

definitively ruled that West Virginia Code § 25-4-6
provided that petitioner was ineligible for youthful
offender sentencing because he was pleading guilty to a
felony offense punishable by a life term of
incarceration.  The circuit court also repeated that,
even if petitioner was eligible under West Virginia
Code § 25-4-6, it was unlikely to sentence him as a
youthful offender given the facts of this case.
Accordingly, the circuit court allowed petitioner the
opportunity to confer with his attorneys and the
opportunity to withdraw his guilty plea.

Following two discussions off the record,
petitioner informed the circuit court that he did not
desire to withdraw his plea and wanted to continue with
the sentencing hearing.  Thereafter, the circuit court
found that, because of petitioner's "young age," a
Mercer County jury would have made a recommendation of
mercy if the case had gone to trial.  Therefore, the
circuit court accepted petitioner's guilty plea and,
pursuant to Rule 11(e)(1)(C), imposed the
mutually-agreed upon sentence of a life term of
incarceration with the possibility of parole.

Strange v. Ballard, NO. 16-1137, 2017 WL 5013323, *1-2 (W. Va.

Nov. 3, 2017).

Strange objects to the PF&R's recommendation that this court

find his plea was voluntary and that counsel's advice to plead

guilty was not outside the broad range of professionally

competent assistance.  Essentially, he argues that he received

erroneous advice from his attorneys that he would be sentenced as

a youthful offender and that, had he been advised correctly, he

would not have pled guilty.  See ECF No. 17 at 3 ("Petitioner

OBJECTS to the PF&R's failure to address the fact that

Petitioner's guilty plea was directly related to Trail [sic]

Counsel's erroneous advice regarding sentencing as a youthful offender and that but [for] that erroneous advice he would not have plead [sic] guilty.").

The standards established by the United States Supreme Court in determining whether a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Under Strickland, a plaintiff must show (1) that counsel's performance was so deficient that it "fell below an objective standard of reasonableness," and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. See id. at 687-92.  Counsel's performance is entitled to a presumption of reasonableness.  See id. at 689.  Thus, a habeas plaintiff challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies.  See id.  The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered.  See id.  The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy.

-8-

Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert.
denied, 506 U.S. 1087 (1993).

"To show prejudice in the guilty-plea context, the
petitioner must 'demonstrate a reasonable probability that, but
for counsel's errors, he would not have pleaded guilty and would
have insisted on going to trial.'" Christian v. Ballard, 792
F.3d 427, 443-44 (4th Cir. 2015)(quoting Premo v. Moore, 562 U.S.
115, 129 (2011)).

> Even without § 2254's deference, the Strickland
> standard "is a most deferential one." Harrington, 562
> U.S. at 105, 131 S. Ct. 770. "Unlike a later reviewing
> court, the attorney observed the relevant proceedings,
> knew of materials outside the record, and interacted
> with the client, with opposing counsel, and with the
> judge" and "[i]t is all too tempting to second-guess
> counsel's assistance after conviction or adverse
> sentence." Id. (internal quotation marks omitted).
> When Strickland's deferential standard for evaluating
> the Sixth Amendment claim is viewed under the extra
> layer of deference that § 2254 demands, the "review
> must be doubly deferential in order to afford both the
> state court and the defense attorney the benefit of the
> doubt." Woods, 135 S. Ct. at 1376 (emphasis added)
> (internal quotation marks omitted). "[F]ederal judges
> are required to afford state courts due respect by
> overturning their decisions only when there could be no
> reasonable dispute that they were wrong." Id.
>
> Moreover, "special difficulties" arise when
> federal judges are called upon to evaluate trial
> counsel's actions in the context of a state court
> guilty plea, where "the record . . . is never as full
> as it is after a trial," and "the potential for the
> distortions and imbalance that can inhere in a
> hindsight perspective may become all too real." Premo,
> 562 U.S. at 125, 131 S. Ct. 733.

> "[T]he guilty plea and the often concomitant plea
> bargain are important components of this country's
> criminal justice system," <u>Blackledge v. Allison</u>, 431
> U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed.2d 136 (1977),
> and the advantages that they provide to all concerned
> "can be secured . . . only if dispositions by guilty
> plea are accorded a great measure of finality."  <u>Id.</u>
> "[R]epresentations of the defendant, his lawyer, and
> the prosecutor at such a hearing, as well as any
> findings made by the judge accepting the plea,
> constitute a formidable barrier in any subsequent
> collateral proceedings."  <u>Id.</u> at 73-74, 97 S. Ct. 1621.
> Such "[s]olemn declarations in open court carry a
> strong presumption of verity" and "subsequent
> presentation of conclusory allegations unsupported by
> specifics is subject to summary dismissal, as are
> contentions that in the face of the record are wholly
> incredible."  <u>Id.</u> at 74, 97 S. Ct. 1621.  "More often
> than not a prisoner has everything to gain and nothing
> to lose from filing a collateral attack upon his guilty
> plea," because "[i]f he succeeds in vacating the
> judgment of conviction, retrial may be difficult."
> <u>Blackledge</u>, 431 U.S. at 71, 97 S. Ct. 1621.  "These
> considerations make strict adherence to the <u>Strickland</u>
> standard all the more essential when reviewing the
> choices an attorney made at the plea bargain stage."
> <u>Premo</u>, 562 U.S. at 125, 131 S. Ct. 733.

<u>Id.</u> at 444.

Under the second prong of <u>Strickland</u>, a petitioner must show

that the errors were "sufficiently serious as to deprive the

defendant of a fair trial, a trial whose result is reliable."

<u>Strickland</u>, 466 U.S. at 687.  Furthermore, a court may address

the two prongs in any order and a failure to establish one prong

obviates a need to address the other.  <u>Id.</u> at 697 ("Although we

have discussed the performance component of an ineffectiveness

claim prior to the prejudice component, there is no reason for a

court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.  Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.").

"In Missouri v. Frye, 566 U.S. 134 (2012), the Court recognized that deficiencies in counsel's advice concerning the consequences of pleading guilty can be remedied by the trial court when a defendant enters his plea." Leonhart v. Shoop, No. 19-3570, 2019 WL 6869631, *2 (6th Cir. Oct. 30, 2019); see also United States v. Akande, 956 F.3d 257, 262 (4th Cir. 2020) ("Circuit precedent holds that a defendant cannot prevail on a claim of ineffective assistance of counsel that arises from counsel's misadvice if, before accepting the plea, the district court provides an admonishment that corrects the misadvice and

-11-

the defendant expresses that he understands the admonishment.")
(internal citation and quotation omitted).  That is exactly what
happened here.  As Magistrate Judge Tinsley explained:

> Despite the fact that the circuit court
> assiduously counseled Petitioner at the outset of his
> sentencing hearing that state law did not permit him to
> be sentenced as a youthful offender, and then permitted
> him the opportunity to discuss with his counsel whether
> he wished to withdraw his guilty plea and go to trial,
> Petitioner ultimately determined that he wanted to
> proceed with his guilty plea and sentencing, knowing
> that he would not be sentenced [as] a youthful offender
> and would receive a life sentence.
>
> * * *
>
> Petitioner maintains that the plea and sentencing
> transcripts demonstrate the high level of confusion on
> this issue.
>
> To the contrary, the transcripts herein
> demonstrate that, despite the initial misunderstandings
> of Petitioner and his counsel on the youthful offender
> sentencing issue, the circuit court clearly explained
> to Petitioner that he was not eligible for youthful
> offender sentencing and that, even if he were, the
> court was not inclined to grant such sentencing due to
> the grave nature of his offense.

PF&R at 9-10.  Therefore, counsel's deficiency, if any, was cured
by the court.

     Likewise, Strange cannot establish prejudice under
Strickland.  See United States v. Woodson, No. 10-4989, 422 F.
App'x 295, 297 (4th Cir. Apr. 11, 2011) (finding no Strickland
prejudice where "counsel failed to provide advice, but the court
corrected this failure by providing Woodson with the correct

-12-

information during the Rule 11 colloquy"); Leonhart, 2019 WL 6869631 at *2 ("And this court has consistently held that any prejudice caused by counsel's erroneous advice concerning the defendant's sentencing exposure is cured if the trial court gives him the correct sentencing information during the change-of-plea hearing.").

The West Virginia Supreme Court of Appeals concluded that Strange's plea was knowing and voluntary.

> The circuit court found that, at the sentencing hearing, it allowed petitioner the opportunity to withdraw his guilty plea once he was informed that he was not eligible for youthful offender sentencing. In Strange I, we similarly found that "the circuit court allowed petitioner the opportunity to confer with his counsel and the opportunity to withdraw his guilty plea." 2016 WL 143433, at *1. As we noted in Strange I, "petitioner agreed to proceed upon his guilty plea." Id. Moreover, at the earlier plea hearing, the circuit court (1) questioned whether petitioner was eligible for youthful offender sentencing; and (2) informed petitioner that, even if he was not excluded from youthful offender sentencing, it was unlikely to sentence him pursuant to West Virginia Code § 25-4-6 given that he killed another person in a disagreement over whether a hallway light should have been left on or off in their apartment complex. Therefore, we find that petitioner was fully informed at both the plea and sentencing hearings that there was little to no possibility of being sentenced as a youthful offender. We conclude that both petitioner's initial decision to plead guilty and his decision not to withdraw his plea at the sentencing hearing were knowingly and voluntarily made.

Strange, 2017 WL 5013323, at *3. The court cannot conclude that the state court's decisions in this regard were contrary to, or

involved an unreasonable application of, clearly established Supreme Court precedent, or that they involved an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Based on the foregoing, Strange's objection that his plea was not voluntary is **OVERRULED**.

B.   _Strickland_ _Prejudice_

As discussed above, under Strickland, not only must Strange show that his counsel's performance was deficient, he also must show that he was prejudiced by that performance.  Strange takes issue with the PF&R's conclusion that he cannot show prejudice and states that he "has adequately demonstrated a reasonable probability that he would have rejected the plea had he not been given the erroneous advice by counsel that he was eligible to be sentenced as a youthful offender."  ECF No. 17 at 13.

A state court can reasonably reject a petitioner's claim of prejudice if the "decision to reject the plea agreement and proceed to trial . . . would not have been a rational one." Christian, 792 F.3d at 452 (citing Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

> When evaluating objective reasonableness under the prejudice prong of Strickland, "[t]he challenger's subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts."

> *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir.
> 2012).  The challenger "cannot make that showing merely
> by telling [the court] now that [he] would have gone to
> trial then if [he] had gotten different advice." *Pilla
> v. United States*, 668 F.3d 368, 372 (6th Cir. 2012).
> In other words, to obtain relief from a guilty plea,
> the defendant must do more than allege he would have
> insisted on going to trial if counsel had not
> misadvised him as to the consequences of that decision.
> The "petitioner must convince the court that a decision
> to reject the plea bargain would have been rational
> under the circumstances." *Padilla*, 559 U.S. at 372,
> 130 S. Ct. 1473; *see also* *Roe v. Flores-Ortega*, 528
> U.S. 470, 486, 120 S. Ct. 1029, 145 L. Ed.2d 985
> (2000).

*Id.* at 452-53.

The West Virginia Supreme Court of Appeals rejected

Strange's claim that he had shown *Strickland* prejudice:

> [W]e find that the record reflects that petitioner's
> attorneys provided effective assistance and that their
> advice in favor of a guilty plea was not based on
> unpreparedness for trial, but because, as they told the
> circuit court, the plea was in petitioner's best
> interest.
>
> The plea agreement was in petitioner's best
> interest because of its preservation of the possibility
> of parole with regard to a life sentence in light of
> the substantial evidence of guilt.  Both the State's
> proffer at the plea hearing and the circuit court's
> findings in its November 16, 2016, order detail the
> evidence of petitioner's guilt.  Therefore, we find
> that, even assuming arguendo that petitioner's
> attorneys were deficient in some way, petitioner has
> not shown that he would have not pleaded guilty and
> insisted on going to trial.

*Strange*, 2017 WL 5013323, at *4-5.  Under these circumstances,

the court cannot conclude that the West Virginia Supreme Court of

-15-

Appeals' application of <u>Strickland</u> was unreasonable.  <u>See</u>
<u>Christian</u>, 792 F.3d at 453. (finding no <u>Strickland</u> error where
prisoner "had little hope of prevailing at trial on the charges"
and "evidence of [ ] guilt was overwhelming").

Our appeals court has repeatedly made clear that "[p]leading
guilty typically entails a deliberate choice to accept the risks
and rewards of a deal, and that decision may not be casually set
aside on the basis of buyer's remorse." <u>Dingle v. Stevenson</u>, 840
F.3d 171, 174 (4th Cir. 2016).  "Contracts in general are a bet
on the future.  Plea bargains are not different:  a classic
guilty plea permits a defendant to gain a present benefit in
return for the risk that he may have to forego future favorable
legal developments. . . .  Some element of pressure exists in
every deal, as the tradeoff between present certainty and future
uncertainty is emblematic of the process of plea bargaining."
<u>Id.</u> at 175.  That is why, "[i]n cases such as this, 'strict
adherence to the <u>Strickland</u> standard [is] all the more
essential[.]'" <u>Christian</u>, 792 F.3d at 454 (quoting <u>Premo</u>, 562
U.S. at 125).

### III.

Petitioner's objections are **OVERRULED**.  The court **ADOPTS** the
findings and conclusions contained in Magistrate Judge Tinsley's
PF&R, **DENIES** petitioner's petition for a writ of habeas corpus

under 28 U.S.C. § 2254; and **DISMISSES** this matter from the court's active docket.

Additionally, the court has considered whether to grant a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>Rose v. Lee</u>, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance.  Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion to all counsel of record and to petitioner, pro se.

**IT IS SO ORDERED** this 30th day of March, 2021.

ENTER:

David A. Faber
Senior United States District Judge

-17-